UNITED STATES of America, Plaintiff,

v.

Rene BENITEZ, Armando Benitez, Jose Duarte–Acero, Jairo David Valencia Cardenas, Defendants.

No. 82–292–CR–GONZALEZ.

United States District Court, S.D. Florida.

Nov. 4, 1998.

Michael Sullivan, U.S. Attorney's Office, Miami, FL, for plaintiff.

Stephen J. Finta, Fort Lauderdale, FL, for Rene Benitez, defendant.

Patrick Michael Hunt, Federal Public Defender's Office, Fort Lauderdale, FL, for Jose Duarte–Acero, defendant.

Michael H. Bloom, Miami, FL, for Valencia Cardenas, defendant.

## ORDER

GONZALEZ, District Judge.

**THIS CAUSE** has come before the Court upon Defendants', Rene Benitez and Jose Duarte–Acero's, Motion to Dismiss Indictment, filed April 28, 1998.[1] The parties have briefed the Motion fully, and the Court heard oral argument of counsel on Friday, September 11, 1998. The Motion is now ripe for disposition.

### BACKGROUND

Defendants Benitez and Duarte–Acero are accused of an assault on two special agents of the United States Drug Enforcement Administration ("DEA"). This assault allegedly took place in February of 1982, outside of Cartagena, Colombia.

On June 11, 1982, Defendants were indicted in the United States for the assault on the two DEA agents. The United States sought extradition for trial on the present offense. The Colombian government allowed extradition of some of the Defendants for trial on other offenses. However, the Colombian government refused to extradite Defendants for trial on the DEA assault.

---

1. Defendant Duarte–Acero filed his Motion to Dismiss on April 28, 1998, and on May 1, 1998, Defendant Benitez filed his Motion to Adopt Duarte–Acero's Motion to Dismiss Benitez's Motion to Adopt was granted on May 7, 1998.

In 1995, Defendant Benitez was brought from South America to the United States, and in 1997, Defendant Duarte–Acero was brought to the United States.[2] Once in the United States, the Defendants were arrested and arraigned on the DEA assault. Defendants' current presence in the United States is not pursuant to any extradition treaty between the United States and Colombia.[3]

Defendants allege that prior to being brought to the United States, the Colombian government tried, convicted, and incarcerated them in Colombia for the present offense.[4] Defendants claim that because of their Colombian convictions, the United States cannot prosecute them for the same offense.

## DISCUSSION

As grounds for their Motion to Dismiss the Indictment, Defendants rely on the International Covenant on Civil and Political Rights, as well as on the international principles of *non bis in idem*, comity, and abstention. The Court will discuss each of these grounds in turn.

### THE INTERNATIONAL COVENANT ON CIVIL AND POLITICAL RIGHTS

■ The primary issue in this Motion is whether the International Covenant on Civil and Political Rights ("ICCPR") operates to bar a successive prosecution by the United States government for a crime over which the United States otherwise has jurisdiction because Defendants were previously tried and convicted in Colombia. Having extensively researched this issue, it appears that this is a question of first impression.

■ On September 8, 1992, the United States became party to the ICCPR. As Defendants correctly point out, a properly ratified treaty is the supreme law of the land. U.S. Const. art VI, § 2, cl. 2.

The intent of the ICCPR is to provide international protection for the civil and po-

litical rights of the individual, as well as economic, social and cultural rights. ICCPR, preamble, 31 I.L.M. 648.

Article 14(7) of the ICCPR provides,

"No one shall be liable to be tried or punished again for an ·offence [*sic* British spelling] for which he has already been finally convicted or acquitted in accordance with the law and penal procedure of each country."

Defendants read Article 14(7) as creating an international prohibition on successive prosecutions. In other words, according to Defendants' reading, the ICCPR prohibits a prosecution by one national government for an offense for which one has already been either convicted or acquitted by another national government.

The Court disagrees with Defendants and finds that the ICCPR, Article 14(7), bars only successive prosecutions by the same government.

By its language, the ICCPR does not purport to regulate affairs between nations. Rather, the ICCPR is an international agreement prescribing how each state party is to treat individuals within its jurisdiction. Article 2(1) of the ICCPR states, *"Each State Party to the present Covenant undertakes to respect and ensure to all individuals within its territory and subject to its jurisdiction the rights recognized in the present Covenant. . . ."* (emphasis added).

The language of the particular provisions in Article 14 further supports this position. Even Article 14(7), the provision on which Defendants rely, states that no one shall be prosecuted for an offense for which he has already been convicted or acquitted "in accordance with the law and penal procedure of *each* country." (emphasis added). Other provisions of the ICCPR make it clear that the

---

**2.** In 1987, the Colombian Supreme Court annulled Colombia's extradition treaty with the United States.

**3.** The issue of an extradition treaty as a bar to the present prosecution has already been dealt with by this Court. *See* Order of August 5, 1997 (ratifying and affirming Magistrate's Report and

Recommendation of April 24, 1997, as to Defendant Benitez).

**4.** Although Defendants have not yet provided evidence of these convictions, for purposes of this Motion, the Court will assume that Defendants could prove that they were tried and convicted in Colombia for the charged assault.

treaty was intended to regulate a state party's internal conduct.[5]

In addition, in a document that Defendants provided to the Court, the Human Rights Committee—created under Article 20 of the ICCPR—states that the ICCPR is not a mere exchange of obligations between States, but rather, a human rights treaty which is "for the benefit of persons *within their jurisdiction.*" *General Comment 24(52)*, U.N. Human Rights Committee, 52nd Sess., 1382nd mtg. at 2, U.N. Doc. ICCPR/ C/21/Rev.1/Add.6 (1994) (emphasis added). The Committee Comment further declares, "The intention of the Covenant is that the rights contained therein should be ensured to all those *under a State's [sic] party's jurisdiction.*" *Id.* at 3 (emphasis added).

Most importantly perhaps, the Human Rights Committee itself previously held that Article 14(7) did not bar prosecution in a situation almost identical to the present case. In *A.P. v. Italy*, Communication No. 204/1986 (decision adopted Nov. 2, 1987 at 31st Sess.), the Human Rights Committee held that Italy, as a signatory nation, was not barred from prosecuting an individual for the same offense for which he had previously been convicted and sentenced in Switzerland. *See* Report of the Human Rights Committee, 43rd Sess., Supp. No. 40, at 242044, U.N. Doc. A/43.40 (1988). The Committee stated, "[T]his provision prohibits double jeopardy *only with regard to an offence adjudicated in a given State.*" *Id.* (emphasis added).

Furthermore, since the ratification of the ICCPR, while no courts may have directly addressed the applicability of ICCPR Article 14(7), at least two United States courts have held that the United States and another nation may bring successive prosecutions for the same offense. *United States v. Rezaq*, 134 F.3d 1121, 1128 (D.C.Cir.1998) (previous trial of defendant in Malta was not bar to successive prosecution in the United States); *Chukwurah v. United States*, 813 F.Supp. 161, 167 (E.D.N.Y.1993) (fact that Nigeria may later punish defendant for same offense was no bar to United States prosecution).

Also, the United States Senate in ratifying the ICCPR, apparently also understood the treaty to regulate a state party's internal criminal procedure. In ratifying the ICCPR, the Senate stated that the United States "understands the prohibition upon double jeopardy in paragraph 7 to apply only when the judgment of acquittal has been rendered by a court of the same government unit, as is seeking a new trial for the same cause." 138 Cong. Rec. S4781–01, S4783. The import of this qualification is that the Senate understood this paragraph to apply to a nation's internal prosecutions. The Senate wished to preserve the ability for the federal government and states to successively prosecute a person under the "dual sovereignties" exception to the Fifth Amendment double jeopardy bar. The Court does not believe that the ratifying Senate understood the ICCPR to bar successive prosecutions by two distinct nations.

Thus, it is the opinion of this Court that Article 14(7) of the ICCPR is not a bar to successive prosecutions by different nations, but only against successive prosecutions by the same governmental unit.

### THE INTERNATIONAL PRINCIPLES OF NON BIS IN IDEM, COMITY, AND ABSTENTION

Defendants also argue that the international principles of *non bis in idem*, comity, and abstention should act to preclude this prosecution.

■ In the absence of a treaty, the general rule is that a sovereign state is not obligated to respect or enforce the criminal judgment of another sovereign state. *E.g., Chua Han Mow v. United States*, 730 F.2d 1308, 1313 (9th Cir.1984) (conviction in Malaysia not preclude prosecution in the United States for same offense).

■ The international principle of *non bis in idem* is a term used to describe double-jeopardy provisions in international instruments. *See, e.g., Sindona v. Grant*, 619 F.2d 167, 177–78 (2d Cir.1980). While the

---

5.  *E.g.*, Article 10(3) (describing required penitentiary system); Article 23 (discussing rights of marriage); Article 27 (guaranteeing cultural, religious, and linguistic freedom) "[i]n those States in which ethnic, religious or linguistic minorities exist[.]"

United States Supreme Court has repeatedly recognized a dual sovereignties exception to the Fifth Amendment double jeopardy protection, *see Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), Defendants argue that the international principle of *non bis in idem* is broader than this construction of the Double Jeopardy Clause. This is true in the context of a *non bis in idem* clause in an extradition treaty. *Sindona,* 619 F.2d at 177–78. However, for the purposes of the present Motion, no extradition treaty is at issue, and as discussed above, the ICCPR does not preclude this prosecution.

 Defendants next argue that the principles of comity and abstention preclude their prosecution. In the realm of international criminal law, the principle of comity means that a court of one nation must respect a foreign court's interpretation of its own law. This usually arises when a court tries to determine whether offenses in two separate nations are the same for the purpose of a *non bis in idem* clause in an extradition treaty. *See Casey v. Department of State,* 980 F.2d 1472, 1477 (D.C.Cir.1992) (under principle of comity, United States court bound to give deference to determination of Costa Rican court in extradition proceeding as to Costa Rican law). In the present case, the issue of international comity has no application.

 Defendants also argue that the Court should exercise "international abstention" to refrain from hearing this case. International abstention simply means that in instances where a decision by a United States court would be detrimental to international comity, that court should abstain from proceeding. The principle of international abstention was enunciated in *Turner Entertainment Co. v. Degeto Film,* 25 F.3d 1512 (11th Cir.1994). The Eleventh Circuit stated in Turner that this principle applies in "some private international disputes...." 25 F.3d at 1518. The Court finds that a decision by this Court will not disturb international comity. Thus, the principle of international abstention is inapplicable to this case.

## CONCLUSION

While Defendants may be correct that basic notions of fairness would seem to require that an offense for which an individual has already been tried should not be the subject of a second prosecution, that is not the law. Colombia may have had the right under its then-existing extradition treaty with the United States to refuse extradition because it had already tried Defendants for the crime that the United States now alleges. However, that is not the issue in this Motion, and the ICCPR does not provide Defendants with the relief that they seek. Likewise, the international principles of *non bis in idem,* comity, and abstention do not preclude the Defendants' prosecution by the United States.

Accordingly, having reviewed the Motion and the record, and being otherwise duly advised, it is hereby:

**ORDERED AND ADJUDGED** that Defendants', Rene Benitez and Jose Duarte–Acero's, Motion to Dismiss Indictment, filed April 28, 1998, is **DENIED.**